IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  06-cv-02003-WYD-KLM

PAMELA J. STONEY,

    Plaintiff,

v.

CINGULAR WIRELESS L.L.C., a Delaware corporation,

    Defendant.

**ORDER**

THIS MATTER is before the Court on Plaintiff's Motion for Reconsideration (filed October 8, 2009).  The motion seeks reconsideration of the Court's Order of September 23, 2008, which granted Defendant's Motion for Summary Judgment on Plaintiff's employment claims.  A response to the motion was filed November 3, 2009, a reply was filed November 18, 2009, a surreply was filed December 18, 2009, and a surrebuttal brief was filed January 23, 2009.  Plaintiff argues that the Court misapprehended the facts and/or overlooked the law with respect to both of her claims.

II.    ANALYSIS

Plaintiff's motion seeks reconsideration of the Order Granting Summary Judgment pursuant to FED. R. CIV. P. 59(e).  A motion for reconsideration is an extreme remedy to be granted in rare circumstances."  *Brumark Corp. v. Samson Resources Corp.*, 57 F.3d 941, 944 (10th Cir. 2995).  There are three major grounds that justify reconsideration under Rule 59(e):  (1) an intervening change in the controlling law; (2)

the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice. *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000); *Brumark Corp.*, 57 F.3d at 944. "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Servants of the Paraclete*, 204 F.3d at 1012. "It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id*.

I now turn to the motion to reconsider the granting of summary judgment on the first claim. Plaintiff asserts that the Court was incorrect in finding that she had alleged no evidence of pretext in connection with the decision to fire her based on the e-mail that her supervisors claimed was insubordinate, as among other things she presented evidence that her supervisor Ms. Caprio did not tell the truth in stating the reasons for her decision to place Plaintiff on a Performance Improvement Plan ("PIP") that prompted her e-mail. Further, Ms. Scott only cursorily investigated Plaintiff's claim that Ms. Caprio had acted abusively in two lengthy telephone conversations that day and the previous day before the e-mail was sent by Plaintiff.

Plaintiff argues that evidence that an employer did not investigate allegations of misconduct involving other employees or that it progressively disciplined other employees, while not progressively disciplining the plaintiff, creates a genuine issue of material fact on the question of pretext. The fact that AT&T overreacted in terminating Plaintiff's employment, given the nature of her conduct and her long and productive work record, with no prior discipline, also could cause a reasonable juror to conclude

that AT&T based that decision on Plaintiff's protected activity, not on that one e-mail message.

Further, it is argued by Plaintiff that the Court incorrectly analyzed Ms. Caprio's decision to place Plaintiff on a PIP separately from AT&T's decision to terminate Plaintiff's employment when in fact those decisions were inextricably intertwined with each other. Among other things, had Ms. Caprio not informed Plaintiff that she would be placed on a PIP, Plaintiff never would have sent Ms. Caprio that e-mail message. Plaintiff also contends that the Court did not consider the authority she cited that an employer cannot provoke an employee and then rely on the employee's intemperate response as a ground for terminating that person's employment or for not reinstating that employee.

I find, after carefully considering Plaintiff's argument, that I should reconsider my granting of summary judgment as to the first claim to prevent manifest injustice. I find that Plaintiff has now clarified her argument in a manner sufficient to show pretext. Specifically, I find that Plaintiff has now demonstrated that the PIP that she was placed on is inextricably tied to the e-mail that she sent, *i.e.*, there is evidence from which a reasonable jury could find that Plaintiff sent the e-mail as a result of having learned that she had been placed on the PIP.

There is also evidence that placing Plaintiff on the PIP may have been pretextual. Plaintiff has presented evidence that not only did Ms. Caprio fail to inform her that she was required to distribute her quota to her team at the beginning of June 2004, but also that Plaintiff and management were recalculating that quota as late as

June 15, 2004; that Ms. Caprio never attempted to determine whether Plaintiff had failed to distribute the June 2004 quota at the beginning of that month; that Ms. Caprio had no basis for concluding that Plaintiff had unjustifiably failed to begin work on the reconciliation project by July 2, 2004, since Ms. Caprio sent e-mail messages to Plaintiff and two of her peers on July 1, 2004 in connection with the training they would be providing to Plaintiff in order for her to perform work on that project; that Ms. Caprio had no basis for concluding that Plaintiff had not held weekly meetings with members of her teams; and that Ms. Caprio had no basis for concluding that Plaintiff's ASR was not providing assistance to members of her team.  In other words, Plaintiff has presented evidence that Ms. Caprio's reasons for her decision to place Plaintiff on a PIP may not have been supported.  Given the fact that I now find the PIP and e-mail were interrelated, I find that this evidence of pretext is relevant to Plaintiff's claim.

Moreover, there is evidence that Ms. Caprio kept Plaintiff on the phone for hours and allegedly screamed at her which may have been precipitated Plaintiff's e-mail.  *See Trustees of Boston University v. N.L.R.B.*, 548 F.2d 391, 393 (1st Cir. 1977) ("'An employer cannot provoke an employee to the point where she commits . . . an indiscretion. . . and then rely on this to terminate her employment'") (quotation omitted). Plaintiff has also argued that Ms. Scott only cursorily investigated her claim that Ms. Caprio had acted abusively in the two lengthy telephone conversations that preceded her e-mail.  Finally, I agree with Plaintiff that a reasonable juror may conclude that Defendant overrreacted in terminating Plaintiff's employment given the nature of her conduct and her long and productive work record, with no prior discipline, and that

this could support a conclusion that Defendant based the termination on protected activity, as compared to the e-mail. All of this further supports my finding that Plaintiff has now shown pretext in connection with the decision to terminate her. Accordingly, I find that the motion to reconsider should be granted and Plaintiff's first claim reinstated.

Plaintiff also argues as to the first claim that I did not correctly apply Colorado case law on the right of employees to be duly compensated by an employer for time actually worked. I reject this argument, as I specifically found that Plaintiff's assertion that she was fired because she complained that she and her team members were not being paid properly implicates public policy pursuant to *Hoyt v. Target Stores, Div. of Dayton Hudson Corp.*, 981 P.2d 188 (Colo. Ct. App. 1998). However, to the extent that Plaintiff now clarifies that other actions on her part, such as making sure that Defendant's predecessor tracked sales correctly and calculated sales-based commissions accurately, were part of her efforts to make sure she and her team members were being paid properly, I will allow these issues to be presented as part of the first claim if Plaintiff can show at trial that these are tied to her complaints about not being paid properly.

As to the second claim, this claim relates to the letter from Plaintiff's attorney Sean McGill dated July 8, 2008 to the Colorado Department of Labor which was copied to Mr. Pember of Defendant's Washington office. I found in my Order Granting Summary Judgment that even if I assumed that the letter was mailed on July 8, 2008, it "could not have been received by Mr. Pember in Washington, D.C. prior to the July 9, 2008, decision to terminate Plaintiff" (Doc. No. 119, p. 20). Further, I found that there

was "no evidence that this letter or its contents were transmitted or made known to the individuals who made the decision to terminate Plaintiff" (*id.*).

Plaintiff first argues that there is a genuine issue of material fact on the issue of whether Defendant made the decision to terminate Plaintiff's employment on July 9, 2004, or on some later date. I disagree. As I found in the original order, although Plaintiff asserts she was not actually notified of the decision to terminate her until July 12, she presented no evidence to counter Defendant's evidence that Plaintiff's supervisors made the decision to terminate her on July 9. Plaintiff has presented no newly discovered evidence on this issue. Instead, she relies on the same evidence that I previously considered. The fact that the separation form was not filled out until July 12 or that Defendant stipulated that Plaintiff's termination date was July 12 does not mean that the decision to terminate Plaintiff was made that date. Indeed, the evidence on this issue is that the decision to terminate Plaintiff was actually made on July 9.

Further, even if there is a genuine issue of material fact as to the date Plaintiff was terminated, I still find that the granting of summary judgment was appropriate. Plaintiff asserts that given the nature of that letter – a threat to sue the company for unpaid commissions – it is likely that Mr. Pember contacted the company's legal department immediately after he received it. She argues that a reasonable juror could conclude that, given the nature of those allegations, the company's legal department would have contacted Plaintiff's supervisors to determine whether the allegations in that letter were true and what defenses, if any, the company could make in response to them. Further, she asserts that in light of the fact that Ms. Caprio, Ms. Scott and Kathy

Ray could not agree on who made the decision to terminate Plaintiff's employment and Ms. Caprio's inconsistencies in explaining the reasons for her decision to place Plaintiff on a PIP, a reasonable juror could conclude that they were not telling the truth when they denied knowledge of Mr. Pember's letter before the termination decision was made. I find that the foregoing amounts to speculation on the part of Plaintiff, and asks the Court to make assumptions that are not based on the evidence. Plaintiff has still presented no evidence that her employer or supervisors received knowledge of the letter before the decision to terminate her was made.

Finally, the fact that Defendant may not have argued specifically in its summary judgment brief that Plaintiff needed to present evidence that Mr. McGill's letter or its contents were transmitted or made known to the person(s) who terminated Plaintiff's employment is not a basis to reconsider my decision. Plaintiff has not disputed the accuracy of the case law I cited that indicates it is not just any representative of the employer that must have notice of the letter. Instead, it is the employer's supervisors that make the termination decision who must have such notice. In any event, as stated earlier, Plaintiff has not presented evidence that any representative of the employer had knowledge or notice of this letter. Accordingly, I deny the motion to reconsider as to the second claim.

IV.    CONCLUSION

Based upon the foregoing, it is

ORDERED that Plaintiff's Motion for Reconsideration is **GRANTED IN PART AND DENIED IN PART**. Specifically, the Motion for Reconsideration is **GRANTED** as

to the first claim for relief, and the Clerk of Court shall reinstate this claim.  The Motion for Reconsideration is **DENIED** as to the second claim for relief.  It is

FURTHER ORDERED that the parties shall jointly contact my Chambers at (303) 844-2170 within **ten (10) days** of this Order to set a trial date in this matter.

Dated:  May 19, 2009

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge