**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

_____

**PAMELA J. STONEY,**


                 **Plaintiff,**

    **-against-**                          **06-CV-02003**


**CINGULAR WIRELESS LLC,**
**a Delaware corporation,**

                 **Defendant.**

_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


## DECISION & ORDER

### I.    INTRODUCTION

The parties have brought various motions *in limine* that the Court will address

*seriatim*.

### II.    DISCUSSION/CONCLUSIONS

    **a.**    <u>**Defendant's Motion # 1, To Exclude Testimony or**</u>
          <u>**Comment Regarding Defendant's Income, Net Worth, or**</u>
          <u>**Resources Expended by Defendant in this Litigation**</u>

Defendant's first motion *in limine* seeks an order precluding Plaintiff, her counsel,

and any of her witnesses from testifying, making arguments, or presenting any evidence at

trial concerning Defendant's income, net worth, or resources expended by Defendant in

this litigation.  Dkt. # 147.  Acknowledging the application of C.R.S. § 13-21-102(6) ("In any

1

civil action in which exemplary damages may be awarded, evidence of the income or net worth of a party shall not be considered in determining the appropriateness or amount of such damages."),[1] Plaintiff concedes that "evidence of Defendant's income or net worth is irrelevant in the jury's determination of whether it should award punitive damages, and if so, the amount of such damages." Pl. Resp., dkt. # 162.  Plaintiff argues, however, that because her claim is premised upon the contention that Defendant retaliated against her for her complaints about the improper payment of sales commissions, evidence of Defendant's sales revenues is relevant in this dispute.

The Court agrees with this last argument.  Therefore, Defendant's first motion *in limine*  [dkt. # 147] is **granted in part and denied in part**.  The parties are precluded from presenting evidence or comment concerning Defendant's income, net worth, or resources expended in this litigation, but the parties may present evidence or comment regarding Defendant's sales revenue for which Plaintiff claims that commissions were due but not paid.

### b.      Defendant's Motion # 2, To Exclude Argument or Comment of any "Golden Rule Appeal"

Defendant's second motion *in limine* seeks an order barring Plaintiff and her attorney from making any arguments or statements which ask jurors to put themselves in Plaintiff's position, or that request that the jury "send a message" to Defendant.  Dkt. # 148.  Plaintiff maintains that, because she seeks punitive damages, she must establish that her discharge was "attended by circumstances of fraud, malice, or willful and wanton

---

[1] There appears to be no dispute that Colorado state substantive law applies in this diversity action.

conduct." C.R.S. § 13-21-102(1).[2]   From this, she asserts:

> The jury's decision whether Defendant's predecessor, AT&T Wireless Services, Inc., acted fraudulently, maliciously or through willful and wanton conduct necessarily will require the jurors to make a moral judgment about that company's actions.  It is impossible to decide malice, for example, without applying some neutral moral principles.  If the jurors are not allowed to use moral standards in deciding whether to award punitive damages and the amount of those damages, the jurors will not be able to intelligently apply the statutory standards required for that decision. This Court should not micromanage the parties' closing arguments by forbidding the parties from asking the jurors to apply appropriate legal and moral standards in deciding the liability and damages issues in this case.

Pl. Resp., dkt. # 163.

The motion [dkt. # 148] is **granted in part and denied in part**.  The Court will not forbid the parties "from asking the jurors to apply appropriate legal and moral standards in deciding the liability and damages issues in this case."  However, the Court is confident that the jurors will be able to determine whether the appropriate legal standards have been satisfied without being asked to place themselves in Plaintiff's position or to send Defendant "a message."  Accordingly, Defendant's motion [dkt. # 148] is **granted to the extent that** Plaintiff and her attorneys are prohibited from making arguments or statements which ask jurors to put themselves in Plaintiff's position, or that request that the jury "send a message" to Defendant, but **denied to the extent that** counsel may make arguments that the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct.

---

[2]C.R.S. § 13-21-102(1)(a) provides that a jury may award reasonable exemplary damages if "the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct." C.R.S. § 13-21-102(1)(a).  The term "willful and wanton conduct" means "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff."  C.R.S. § 13-21-102(1)(b).

**c.**     **Defendant's Motion # 3, To Preclude Irrelevant and Prejudicial Comments and Arguments**

Defendant's third motion *in limine* seeks an order precluding Plaintiff, her counsel, and any of her witnesses from making statements about corporate scandals and executive bonuses (whether at Cingular or at some other corporation); referencing that defense counsel "specialize in the trial and defense of lawsuits, or to the number of attorneys representing defendant[];" or referencing the procedural history of the case. Dkt. # 149. Plaintiff does not oppose the motion, but makes "two comments" about the motion.  One, that counsel "should be granted reasonable latitude in presenting closing arguments that are based on the evidence admitted during the trial;" and, two, that any limitation imposed on Plaintiff should be similarly imposed on Defendant.

It is axiomatic that the Court will apply the Rules of Evidence to both parties whether or not a motion *in limine* is made.  This includes the right to present closing arguments "based on the evidence admitted during the trial," and the right to object to irrelevant or prejudicial statements or argument by the other party.  Accordingly, Defendant's motion [dkt. #149] is **granted** as unopposed.

**d.**     **Defendant's Motion # 4 – To Exclude Testimony or Argument that Cingular Did Not Follow Company Policy in Imposing the July 6, 2004 PIP**

Defendant's fourth motion *in limine* seeks an order "precluding Plaintiff, her counsel and any of her witnesses from asserting at trial that Defendant violated company policies or guidelines when it placed Plaintiff on the July 6, 2004 Performance Improvement Plan ("PIP")."  Dkt. # 150.  *If* Defendant did not follow company policy or its normal procedures in placing Plaintiff on the July 6, 2004 PIP, a reasonable fact finder *could* conclude that the

4

deviation from normal practices was some evidence of pretext precipitating Plaintiff's

discharge. See May 19, 2009 Order, p. 3 [dkt. # 140] (concluding that Defendant's act of

placing Plaintiff on the July 6, 2004 PIP "is inextricably tied to the e-mail" that resulted in

her discharge, and that "[t]here is also evidence that placing Plaintiff on the PIP may have

been pretextual."). Therefore, the motion [dkt. # 150] is **denied.**

### e.      **Plaintiff's Motion to Exclude Evidence, Arguments, or Comments Regarding Plaintiff's Charge of Employment Discrimination**

Plaintiff moves *in limine* for an order excluding "any evidence and any arguments

or comments at trial concerning her charge of employment discrimination, the Colorado

Civil Rights Division's Determination concerning that charge, and Plaintiff's decision not to

file a claim, in this case or in any other forum, of age discrimination, sex discrimination or

retaliation for her complaint of sexual harassment." Dkt. # 152. Defendant opposes the

motion contending, *inter alia*, that Plaintiff's sworn statements to the Colorado Civil Rights

Division "directly contradict and undermine Plaintiff's central allegation in this case: that

Defendant's *motivation* for terminating her employment was her alleged complaints about

the problems with the Company's commission tracking system." Dkt. # 159 (emphasis in

original).

The motion [dkt. # 152] is **denied in part and granted in part**.   The statements

made to the Colorado Civil Rights Division by Plaintiff are probative of Plaintiff's state of

mind at the time they were made and relevant to the central issue in this case - that is, the

reason for her discharge. Therefore, the motion is **denied** as to Plaintiff's statements and

charges to the Colorado Civil Rights Division, and to Plaintiff's determination not to pursue

charges of age discrimination, sex discrimination, or retaliation for her complaint of sexual

harassment beyond the Colorado Civil Rights Division.

However, the Colorado Civil Rights Division's function was to determine whether

Plaintiff was discharged *because of* age discrimination, sex discrimination, or retaliation for

her complaint of sexual harassment.  The question of whether the public policy issue now

before the Court was the cause of Plaintiff's discharge was not litigated before that

agency.  Accordingly, to the extent that the Colorado Civil Rights Division commented that

Plaintiff's discharge was because she was insubordinate, the statement is dictum.  It

would be unfair, and confusing to the jury, to present evidence of an administrative

agency's conclusion that was *not* based upon the dispute that this jury must decide.

Therefore, the motion is **granted** to the extent that parties are precluded from referencing

the substance of the Colorado Civil Rights Division's determination on Plaintiff's

employment discrimination charges.[3]

### f.    **Plaintiff's Motion to Preclude Evidence Concerning the Health of Maria Caprio's Mother and Sister**

Next, Plaintiff moves *in limine* for an order excluding "any evidence and any

arguments or comments at trial concerning the health of the mother and/or younger sister

of Maria Caprio."  Dkt. # 153.   In the first instance, the health of Ms. Caprio's family

members, or Ms. Caprio's efforts to care for these individuals, is not relevant to matters

before the Court.  However, it is conceivable that Plaintiff could open the door making this

issue relevant by asserting, for example, that Ms. Caprio was acting erratic at the time of

---

[3]Counsel for the parties are instructed to confer with each other in an effort to reach a stipulation on language that may be presented to the jury addressing the conclusion, as opposed to the substance, of the Colorado Civil Rights Division's determination on Plaintiff's charges (*i.e.* "The Colorado Civil Rights Division determined that Plaintiff's discharge was not motivated by considerations of her age, gender, or because she had previously filed a claim of sexual harassment," or something to this extent).

the discharge, or that Ms. Caprio's lapse of memory of pertinent events is indicative of a

desire to be less than forthright.

Therefore, the motion [dkt. # 153] is **granted** but Defendant may move to vacate

the order if the door is opened at trial.  In the event that Defense counsel believes that this

door is opened, counsel shall ask for a sidebar at which time the issue will be discussed

out of the hearing of the jury.  Defense counsel should be prepared to make a proffer of

the testimony that Ms. Caprio would provide if allowed.

### g.      Defendant's Motion to Exclude Damages and to Strike Testimony Concerning Plaintiff's Hip Replacement Surgery

Defendant moves *in limine* for an order "excluding evidence (including testimony

from Plaintiff or Plaintiff's economic expert, William H. Kaempfer) relating to any damages

for the period from 2007 through 2009 during which Plaintiff contends that she has been

disabled from working."  Dkt. # 158.  In the alternative, Defendant seeks an order

"precluding Plaintiff and Dr. Kaempfer from testifying at trial that Plaintiff has been

disabled and unable to work since 2007, that surgery on Plaintiff's left hip was delayed

creating health complications because of the termination of Plaintiff's employment, and

that Plaintiff has incurred increased economic damages because of an alleged delay in hip

replacement surgery on her left hip." Id.

The basis for Defendant's motion arises from the fact that Dr. Kaempfer stated in

his July 30, 2007 Rule 26(a)(2) Report ("Initial Report") that Plaintiff had been employed

since her discharge and would "soon" be earning $72,000.00 per year. See Def. Ex. B.

Based upon this presumption, Dr. Kaempfer calculated Plaintiff's back pay losses at

$456,000, her front pay losses at $840,000, and opined that "an aggregate fund of from

$642,000 to $1,296,000 will compensate [Plaintiff] for both probable past and future losses." Id.  Defendants conducted discovery on, *inter alia*, this loss calculation.  However, Dr. Kaempfer prepared a Supplemental Report dated October 6, 2009 in which he asserts that: (1) Plaintiff has been disabled since 2007 due to the need for hip replacement surgery on her left hip; (2) Plaintiff "has not been able to earn any income" since his Initial Report because she was "disabled" due to the need for hip replacement surgery; (3) Plaintiff had to delay the surgery "for several years" because she lost her health insurance when Cingular terminated her employment; and (4) the delay in the surgery resulted in health complications that delayed Plaintiff's re-entry into the labor market. Def. Ex. A, p. 4. As a result, Dr. Kaempfer re-calculated Plaintiff's back pay losses at $849,700, her front pay losses at $685,600, and opined that "an aggregate fund of from $1,079,400 to $1,535,300 will compensate [Plaintiff] for both probable past and future losses."  Id. p. 5.

Defendant complains that the Supplemental Report was provided long after the close of discovery, is without any expert medical support for the medical conclusions presented in the report, and is presented on the eve of trial.  Defendant asserts that the Supplemental Report is in violation of Fed. R. Civ. P. 26(a)(2)(C).  Defendant also asserts that Plaintiff failed to supplement her discovery responses, as required by Fed. R. Civ. P. 26(e), to provide notice of the factual circumstances regarding her left hip, her inability to work from 2007 to present, and the medical treatment she received for this condition.

Plaintiff maintains that the delay in disclosing this Supplemental Report was occasioned by the procedural history of the case (which involved a summary judgment decision dismissing the action *en toto* followed by a reconsideration decision re-instating one of Plaintiff's claims), and that Defendant never asked for supplementation of discovery

responses.  Plaintiff also asserts that:

> Defendant has known about Plaintiff's need for follow-up surgery and her
> inability to afford that surgery for more than two and one-half years.  In a
> deposition on April 26, 2007, she testified that she had a hip that needed
> replacement and that she had chronic pain in her right foot, for which she
> could not afford medical treatment (Exh. B, 167:17-169:18).  In the next day
> of her deposition on April 27, 2007, Plaintiff testified that she felt medically
> unable to do the level of driving required in a post-[AT&T Wireless Services,
> Inc. ("AWS")]  job because of problems with her right foot and that she had
> had problems standing in one fixed position because of her hip, although as
> of that date she testified that she had never identified herself as being
> unable to work (Exh. C, 575:3-11). In addition, lead counsel for Defendant
> observed Plaintiff using a cane when she attended two depositions on June
> 1 and October 3, 2007 (Exh. A, p. 2, ¶ 14).

Pl. Resp., p. 6 [dkt. # 166].

Assuming Defendant was aware that Plaintiff needed "follow-up surgery" but could

not afford it, this does not establish that Plaintiff actually had the surgery or that she was

medically or physically unable to work from 2007 to the present.  Plaintiff asserts,

however, that she "supplemented her earlier discovery responses to provide additional

information about [her] surgeries.[4]  She also will be providing copies of her medical

records shortly to Defendant concerning the same surgical procedures."  Id. p. 6.

Plaintiff's contention that she "supplemented her earlier discovery responses to

provide additional information about [her] surgeries" is contradicted  – at least as to her left

hip surgery - by Defendant's assertion that "Plaintiff has never supplemented [her

discovery response to Defendant's Interrogatory No. 2]  to indicate that she had received

---

[4]Plaintiff states that she had left hip replacement surgery on February 5, 2008, had "outpatient
surgery on her right foot on June 9, 2008, and outpatient arthroscopy, with lateral release and shaving of her
patella, on June 9 and on September 30, 2008, respectively." Pl. Resp., pp. 3-4.

medical treatment relating to her left hip." Pl. Mot., p. 11; see also id. p. 8.[5]

Rule 26(e)(1)(A) provides that

[a] party who has made a disclosure under Rule 26(a) – or who has responded to an interrogatory . . . must supplement . . . its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

Fed. R. Civ. P. 26(e)(1)(A).

The Rule is self-effectuating.  It does not require that the opposing party ask whether there have been any factual changes requiring supplementation, so Defendant's failure to "ask[] to reconvene" Plaintiff's deposition or for discovery supplementation is of no moment.  Absent citation to the record demonstrating proper supplementation, the Court finds that Plaintiff has failed to comply with her discovery obligations under Rule 26(e)(1)(A) relative to her left hip treatment.

The procedural history of the case also offers no excuse for Plaintiff's delay in disclosing the Supplemental Report or, more importantly, the factual basis upon which the Supplemental Report is premised.  Chief Judge Daniel issued his reconsideration decision on May 19, 2009.  The facts which form the basis of Dr. Kaempfer's changed opinion existed long before May 19, 2009.  At the very least, diligent counsel would have acted promptly after the May 19, 2009 Decision to put opposing counsel, and the Court, on notice of the factual circumstances underlying Dr. Kaempfer's changed opinion.  This

---

[5]("When asked in discovery to identify every medical condition for which she saw a health care provider, or was treated by a health care provider, for the period from June 1, 2000 through the present, Plaintiff's response indicated that she has not seen any health care provider for problems with her left hip during this nine year period. See Excerpts from Plaintiff's Response to Defendant's Consolidated Interrogatories, attached as Ex. F, response to Interrogatory No. 2. Plaintiff never supplemented her Response to Interrogatory No. 2.").

notice, had it been provided, might very well have been deemed a valid basis to re-open

discovery and, if need be, delay the trial. Waiting until one month before the scheduled

trial date[6] to disclose this information violates the Rule 16 Scheduling Order [dkt. # 39] and

Fed. R. Civ. P. 26(a)(2)(C) and 26(e). See Foraker v. Schauer, 2005 WL 6000493, at *4

(D. Colo. Sept. 8, 2005).[7]

A violation of Rule 26(a) or (e) is addressed by Rule 37(c), which provides in

pertinent part:

**(c) Failure to Disclose [or] to Supplement an Earlier Response**

> **(1) Failure to Disclose or Supplement**. If a party fails to provide information
> or identify a witness as required by Rule 26(a) or (e), the party is not allowed
> to use that information or witness to supply evidence on a motion, at a
> hearing, or at a trial, unless the failure was substantially justified or is
> harmless. In addition to or instead of this sanction, the court, on motion and
> after giving an opportunity to be heard:

>> (A) may order payment of the reasonable expenses, including
>> attorney's fees, caused by the failure;

>> (B) may inform the jury of the party's failure; and

>> (C) may impose other appropriate sanctions, including any of the
>> orders listed in Rule 37(b)(2)(A)(i)-(vi).

---

[6] The trial was originally scheduled to commence on November 2, 2009 before Chief Judge Wiley. See Minute Order [dkt. # 142].

[7] In Foraker, the Court wrote:

The purpose of Rule 26(a)(2)(C) is to prevent unfair surprise at trial and to permit the opposing party to prepare rebuttal expert reports, to depose the expert in advance of trial, and to prepare for depositions and cross-examination at trial. See Coles v. Perry, 217 F.R.D. 1, 4 (D.D.C. 2003) (noting that "the very purpose of the rule is nullified" when an expert "supplements" his report by addressing a new matter after discovery has ended). The Rule also prevents experts from "lying in wait" to express new opinions at the last minute, thereby denying the opposing party the opportunity to depose the expert on the new information or closely examine the expert's new testimony. See Keener v. United States, 181 F.R.D. 639, 641 (D. Mont.1998).

2005 WL 6000493, at *4.

Fed. R. Civ. P. 37(c)(1)(A)-(C).

Plaintiff's failure to provide a timely supplement to Dr. Kaempfer's report, and to provide information upon which the Supplemental Report is based, is neither substantially justified nor harmless.  Further, Plaintiff has failed to identify a competent medical expert who could provide a proper basis for the conclusion that Plaintiff's medical condition was exacerbated by the delay in receiving medical treatment.  Therefore, there is no competent basis upon which the jury could draw the conclusion that the lack of medical insurance was the proximate cause of additional damages to Plaintiff, economic or otherwise.   Neither Dr. Kaempfer nor Plaintiff will be allowed to testify that surgery on Plaintiff's left hip was delayed creating health complications because of the termination of Plaintiff's employment, or that Plaintiff has incurred increased economic damages because of an alleged delay in hip replacement surgery on her left hip.

Plaintiff can testify as to the physical symptoms that she experienced from 2007 to the present, and state whether she was employed or believed she was capable of working during this period of time.  If she testifies that she was physically unable to work, Plaintiff may seek damages for the difference between what she would have earned on disability or a leave of absence if she had remained employed with Defendant and what she actually earned during this period (if anything).  If Defendant is able to establish as a matter of law that, based upon the evidence presented at trial,[8] Plaintiff is not entitled to economic damages for the period during which she was unable to work, Defendant may ask for a directed verdict on that portion of the damage claim, or argue that damages be

[8]Although there have been statements by counsel and Dr. Kaempfer to the extent that Plaintiff has been unable to work for a lengthy period of time, there is no competent proof of that fact before the Court at this time.

limited to the amount she would have earned on a leave of absence or available disability plan minus what she earned or could have earned during this period.

Therefore, Defendant's motion *in limine* for an order "excluding evidence . . . relating to any damages for the period from 2007 through 2009 during which Plaintiff contends that she has been disabled from working," dkt. # 158, is **granted in part and denied in part** consistent with this Decision and Order.

**IT IS SO ORDERED**

DATED:November 25, 2009

Thomas J. McAvoy
Senior, U.S. District Judge