**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
_____

**PAMELA J. STONEY,**

                              **Plaintiff,**

   -against-                                                                  06-CV-02003

**CINGULAR WIRELESS LLC,**
**a Delaware corporation,**

                              **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


## DECISION & ORDER

**I.    INTRODUCTION**

      Following a five-day trial, a jury returned a unanimous verdict in favor of Cingular and against Plaintiff on her sole claim of alleged wrongful discharge in violation of the public policy of the State of Colorado. Plaintiff now moves for a new trial pursuant to Fed. R. Civ. P. 59(a). Defendant has opposed the motion. For the reasons that follow, the motion is denied.

**III.    BACKGROUND**

      Plaintiff asserted that she was discharged from her employment as a sales manager

1

with AT&T Wireless Services, Inc.,[1] in violation of Colorado public policy, because she complained that she and her staff were not being properly compensated. The employer asserted that Ms. Stoney was discharged because she sent a grossly insubordinate email on July 7, 2004 (Def. Ex. P-6) to her supervisor, her peers and her subordinates. Each of the individuals involved in the decision to terminate Plaintiff's employment, Kathy Ray, Gail Scott and Maria Caprio, testified that Plaintiff's insubordinate conduct was the sole reason for the termination of her employment. Plaintiff acknowledged that, "under some circumstances," her email could legitimately be characterized as insubordinate (Def. Ex. A, 4:16-20), and that she regretted having sent the email (Id. 103:10-11). As indicated above, the jury returned a unanimous verdict in favor of Defendant.

Plaintiff now moves for a new trial pursuant to Fed. R. Civ. P. 59(a)(1)(A) asserting three grounds for her motion:

> First, [the] Court erroneously instructed the jury that the "public policy of the State of Colorado protects employees who complain that employees are not being paid for wages and compensation that is earned, vested, and determinable," which "includes complaints about the payment for base salary, commissions and bonuses that have been earned for past work," and that "Plaintiff's complaints related to . . . the quotas assigned to her and her team . . . do not constitute protected activity."
>
> Second, [the] Court erroneously refused to instruct the jury that an employer may not provoke an employee and then rely on the employee's intemperate response as a ground for terminating that person's employment.
>
> Third, [the] Court erroneously refused to allow Plaintiff to use her proposed Exhibits P-43 or P-44 for impeachment or rebuttal purposes or for the

---

[1] Cingular Wireless LLC acquired AT&T Wireless Services, Inc. shortly after Ms. Stoney was discharged on July 12, 2004, and there was no dispute that Cingular Wireless became legally responsible for AT&T Wireless's actions.

2

purpose of attempting to refresh Maria Caprio's recollection.

Pl. Reply ¶ 1. Defendant opposes the motion on each ground.

### III.    STANDARD OF REVIEW

Rule 59(a)(1)(A) provides that "[t]he court may, on motion, grant a new trial on all or some of the issues-and to any party . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Such a motion can be granted based on any error so long as "the district court concludes the 'claimed error substantially and adversely' affected the party's rights." Henning v. Union Pacif. R. Co., 530 F.3d 1206, 1217 (10th Cir. 2008)(quoting Sanjuan v. IBP, Inc., 160 F.3d 1291, 1297 (10th Cir. 1998)).

When the sufficiency of jury instructions are challenged, the Court considers the jury instructions as a whole and determines whether they "properly stated the applicable law and directed the jury to consider matters within its province." Gardetto v. Mason, 100 F.3d 803, 816 (10th Cir. 1996). "The instructions as a whole need not be flawless, but [the Court] must be satisfied that, upon hearing the instructions, the jury understood the issues to be resolved and its duty to resolve them." Medlock v. Ortho Biotech, Inc., 164 F.3d 545, 552 (10th Cir.) (citations omitted), cert. denied, 528 U.S. 813, 120 S. Ct. 48, 145 L. Ed.2d 42 (1999). When a particular jury instruction is challenged as legally erroneous, a new trial may be warranted if the Court is convinced that "the jury might have based its verdict on the erroneously given instruction." Townsend v. Lumbermens Mut. Cas. Co., 294 F.3d 1232, 1242 (10th Cir. 2002).

Rule 61 governs claims for a new trial based upon the contention that Court erred in denying admission of certain evidence. This rule provides:

3

Unless justice requires otherwise, no error in admitting or excluding evidence – or any other error by the court or a party – is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.

Fed. R. Civ. P. 61

## IV. DISCUSSION

### a. Content of Jury Instructions

Plaintiff's first ground on her motion takes issue with a portion of the Court's instructions to the jury which defined "protected activity" under Colorado Law.[2] Plaintiff

---

[2] These instructions provided:

***Elements of Plaintiff's Claim***

*For Plaintiff to recover from Defendant, you must find that Plaintiff has proved, by a preponderance of the evidence, each of the following elements:*

*1. That Plaintiff was employed by AT&T Wireless;*

*2. That AT&T Wireless discharged Plaintiff;*

*3. That Ms. Stoney engaged in protected activity under the public policy of the State of Colorado; and*

*4. That AT&T Wireless discharged Ms. Stoney because she engaged in protected activity.*

*Only the third and fourth elements are in dispute in this case.*

***Third Element***

*On the Third Element, Plaintiff must establish that she engaged in activity protected by the public policy of the State of Colorado.*

*The public policy of the State of Colorado protects employees who complain that employees are not being paid for wages and compensation that is earned, vested, and determinable. This includes complaints about the payment for base salary, commissions and bonuses that have been earned for past work.*

*Complaints about general aspects of an employee's job and the requirements that an employer puts upon its employees are insufficient to implicate the public policy of the State of Colorado. In this regard, Plaintiff's complaints related to: the [Performance Improvement*

(continued...)

asserts that the instructions were legally erroneous because they did not properly instruct the jury concerning the scope of public policy in Colorado. In this regard, Plaintiff contends that there is no requirement under Colorado public policy that complaints be about "wages and compensation that is <u>earned, vested, and determinable</u>" or about "the payment for base salary, commissions and bonuses that <u>have been earned for past work</u>." See Jury Instructions, fn. 2. The Court disagrees.

Absent an explicit understanding to the contrary, employment contracts in Colorado are "at-will" and may be terminated at any time without cause and without notice. <u>Continental Airlines, Inc. v. Keenan</u>, 731 P.2d 708, 711-12 (Colo. 1987). In <u>Martin Marietta Corp. v. Lorenz</u>, 823 P. 2d 100 (Colo. 1992), the Colorado Supreme Court recognized a public policy exception to the rule of at-will employment which "prohibit[s] an employer from placing an employee in the position of keeping a job only by performing an illegal act, forsaking a public duty, or foregoing a job-related right or privilege." <u>Id.</u> at 109. "The essence of the public policy exception is that an employee will have a cognizable claim for wrongful discharge if the discharge of the employee contravenes a clear mandate of public policy." <u>Id.</u> at 107 (internal quotation omitted). "Although generally addressed under circumstances where an employer directs an employee to perform an illegal act as part of his or her work-related duties, the claim may also encompass a situation where an

---

[2](...continued)
*Plan ("PIP")] that she was put on; the quotas assigned to her and her team; not being involved in the appeals process; or other issues related to the terms and conditions of Plaintiff's employment do not constitute protected activity.*

*If you find that Plaintiff has not established that she engaged in protected activity, then your verdict will be for Defendant. If you find that Plaintiff has established that she engaged in protected activity, you will then consider whether she has established the Fourth Element of her claim.*

employee is discharged for <u>exercising a specific statutory right</u> or performing a specific statutory duty." Boeser v. Sharp, 2006 WL 898126, *5 (D. Colo. March 31, 2006)(emphasis added)(citing Martin Marietta Corp., 823 P.2d at 109); see also Crawford Rehabilitation Servs., Inc. v. Weissman, 938 P.2d 540, 553 (Colo. 1997)(To state a public policy claim, "the employee must prove that 'the action directed by the employer would violate a <u>specific statute</u> relating to the public health, safety, or welfare, or would undermine a clearly expressed public policy relating to the employee's rights as a worker. . . .'")(emphasis added)(quoting Rocky Mountain Hosp. & Med. Serv. v. Mariani, 916 P.2d 519, 524 (1996)).

The "specific statutory right" in issue in this case was the Colorado Wage Claim Act, C.R.S. § 8-4-101, *et seq.* The Colorado Wage Claim Act provides employees the right to receive timely payment of wages and compensation from employers. Nasious v. Nu-Way Real Estate, 2007 WL 4858800, at * 3 (D. Colo. Dec. 12, 2007). The statute defines "wages" or "compensation" to mean:

> (I) All amounts for labor or service performed by employees, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculating the same or whether the labor or service is performed under contract, subcontract, partnership, subpartnership, station plan, or other agreement for the performance of labor or service if the labor or service to be paid for is performed personally by the person demanding payment. <u>No amount is considered to be wages or compensation until such amount is earned, vested, and determinable, at which time such amount shall be payable to the employee pursuant to this article.</u>
>
> (II) Bonuses or commissions <u>earned</u> for labor or services performed in accordance with the terms of any agreement between an employer and employee;
>
> (III) Vacation pay <u>earned</u> in accordance with the terms of any agreement. If an employer provides paid vacation for an employee, the employer shall pay

6

> upon separation from employment all vacation pay earned and determinable in accordance with the terms of any agreement between the employer and the employee.

C.R.S. § 8-4-101(8)(a)(emphasis added).

From the plain language of the Colorado Wage Claim Act, there can be no dispute that the statute protects employees in receipt of wages and compensation that are "earned, vested, and determinable." A public policy claim invoking this statute must necessarily be based upon conduct that is intended to further the purpose of the statute, that is, to insure the rights of employees to receive wages or compensation that has been earned.

In addressing the summary judgment motion in this case, Chief Judge Daniel applied a standard consistent with this interpretation. Chief Judge Daniel determined that "Plaintiff's assertion that she was fired because she complained that she and her team members were not being paid properly implicates public policy" but that "Plaintiff's complaints related to the [Performance Improvement Plan] that she was put on, the quotas assigned to her which she contends were incorrect, her complaints about not being involved in the appeals process, or the other myriad issues which Plaintiff raises in the fact section of her briefs, do not state a public policy claim." Stoney v. Cingular Wireless L.L.C., 06-cv-02003-WYD-KLM (D. Colo.), Sept. 22, 2008 Order Granting Summary Judgment, pp. 17-18 [dkt. # 119] (citing, *inter alia*, Hoyt v. Target Stores, Div. of Dayton Hudson Corp., 981 P.2d 188, 191-92 (Colo. Ct. App. 1998)(finding that the right of employees to be duly compensated by an employer under the Colorado Wage Claim Act, for time actually worked, was an issue of major public and economic importance in Colorado)). On reconsideration, Chief Judge Daniel allowed Plaintiff's claim to be expanded to include

7

complaints to the employer that were purportedly intended to "mak[e] sure that [the employer] tracked sales correctly and calculated sales-based commissions accurately" but only "if Plaintiff can show at trial that these are tied to her complaints about not being paid properly." Stoney v. Cingular Wireless L.L.C., 06-cv-02003-WYD-KLM (D. Colo.), May 19, 2009 Order, p. 5 (emphasis added) [dkt. # 140]. As is apparent, Chief Daniel limited Plaintiff's claim to complaints concerning wages or compensation (*i.e.* commissions) that had been earned.[3]

Chief Judge Daniel's decision on these issues was not only the law of the case but, in the undersigned's opinion, constituted correct conclusions under the applicable law which limits a public policy compensation claims to matters within the scope of the Colorado Wage Claim Act, that is, to claims or disputes for compensation that was earned, vested, and determinable. The jury instructions, in the undesigned's opinion, actually reflected the law of the State of Colorado and of the case. Complaints about the employer's decision on future sales quotas, which would yield bonus compensation beyond that of straight sales commissions if the quotas are met, does not implicate the Colorado Wage Claim Act because the complaints do not concern earned compensation.

Much of the focus at trial was on Plaintiff's complaints about the June 2004 sales quota. The undisputed evidence was that the June 2004 sales quota was distributed to sales managers, including Plaintiff, on June 2, 2004, but that Plaintiff did not distribute the quota to her staff until June 22, 2004. Although an increased sales quota was distributed

---

[3] The decision is also in keeping with the allegations contained in Plaintiff's Complaint. See Compl. at ¶ 8 (alleging that she was fired for "complaints and internal appeals in which Plaintiff alleged that AT&T Wireless inaccurately tracked sales and otherwise failed to pay Plaintiff and members of Plaintiff's team **the sales commissions that they had earned**.")(emphasis added)[dkt. # 1].

8

in the middle of June 2004, Plaintiff was instructed by her supervisors to ignore the increased quota and was advised by her supervisor that the employer would rely on the June 2nd quota. Accordingly, there was no evidence that Plaintiff's complaints regarding the increased quotas concerned compensation already earned. Further, there was nothing preventing Plaintiff (or her counsel) from arguing to the jury, consistent with the jury instructions, that she and her staff had "earned" bonus compensation under the pre-existing quota schedule and that her complaints were about this earned compensation as opposed to the employer's business decision to raise the quotas.

Plaintiff's complaint about the legal sufficiency of the jury instructions relative to the quotas in this matter is without merit. Likewise, Plaintiff's complaint about those portions of the jury instructions advising that *"[c]omplaints about general aspects of an employee's job and the requirements that an employer puts upon its employees are insufficient to implicate the public policy of the State of Colorado"* also is without merit. For the reasons discussed above, complaints about the general terms and conditions of an employee's job do not implicate a public policy concern and, thus, cannot form the basis of public policy wrongful discharge claim. See Weissman, 938 P.2d at 552 (the public policy must involve "a matter that affects society at large rather than a purely personal or proprietary interest of the plaintiff or employer"); Rocky Mountain Hosp. & Medical Serv. v. Mariani, 916 P.2d 519, 525 (Colo. 1996)(the public policy "must concern behavior that truly impacts the public in order to justify interference into an employer's business decisions"); Holland v. Board of County Comm'rs, 883 P.2d 500, 507 (Colo. App. 1994)(employee's claim, which related to internal personnel issues, did not involve matters of public concern).

Plaintiff's newly asserted argument that she stated a viable public policy claim (and

9

the jury should have been instructed on the issue) because she had a "reasonable belief" that the employer's conduct regarding the quotas violated public policy, even if accurately reflecting Colorado law, is of no moment on this motion. "It is well settled that motions for new trials cannot be used to raise arguments which could, and should, have been made before the judgment issued. Moreover, they cannot be used to argue a case under a new legal theory." Matthews v. C.E.C. Indus. Corp., 202 F.3d 282 (Table), 1999 WL 1244491, *9 (10th Cir. Dec. 21, 1999)(unpublished). Plaintiff waived the argument by failing to raise it at trial.

Accordingly, the motion for a new trial on Plaintiff's first ground is denied.

### b. Omitted Instruction

Plaintiff argues that the jury instructions were legally erroneous because the Court omitted Plaintiff's proposed instruction that "an employer may not provoke an employee and then rely on the employee's intemperate response as a ground for terminating that person's employment." The argument is without merit.

The cases cited by Plaintiff do not support the proposition that such an instruction should be given in an employment discrimination lawsuit,[4] and Plaintiff's counsel was allowed to argue (and actually did argue) the point to the jury in his closing arguments.

Further, relative to Plaintiff's claim that she was unjustifiably provoked into an "intemperate" response as a pretext for illegal discrimination and Defendant's claim that it took appropriate and legal action in discharging Plaintiff, the Court instructed the jury:

---

[4]Plaintiff cites Escamilla v. Industrial Comm'n of State of Colo., 670 P.2d 815 (Colo. App. 1983); Precision Window Mfg., Inc. v. N.L.R.B., 963 F.2d 1105, 1108 (8th Cir.1992); Trustees of Boston University v. N.L.R.B., 548 F.2d 391, 393 (1st Cir. 1977); N.L.R.B. v. M & B Headwear Co., 349 F.2d 170, 174 (4th Cir. 1965).

10

> *On the Fourth Element, Plaintiff must established that AT&T Wireless discharged her because she engaged in protected activity - that is, because she complained that she and other employees were not being paid properly for work actually performed. Defendant asserts that Plaintiff was discharged for legitimate reasons, namely, that Ms. Stoney was insubordinate after being placed on a Performance Improvement Plan.*

The Court then instructed the jury on the law regarding business judgment, pretext, intent, and gave a conclusion on the question of liability. (Repeated in the Appendix to this Decision and Order). The Court is of the opinion that the jury instructions were proper and that, in totality, they "properly stated the applicable law and directed the jury to consider matters within its province." <u>Gardetto</u>, 100 F.3d at 816. Inasmuch as counsel was allowed to argue the issue to the jury and in light of the instructions as a whole, Plaintiff was not substantially prejudiced by the omission of the proposed instruction. See <u>Brown v. Wal-mart Stores, Inc.</u>, 11 Fed 3d 1559, 1564 (10th Cir. 1993)("an error in jury instructions will mandate reversal of a [civil] judgment only if the error is determined to have been prejudicial after reviewing the record as a whole"). Further, the Court does not find that the jury reached a erroneous conclusion as a result of the omission. Accordingly, the motion on the second ground is denied.

### c. **Exclusion of Plaintiff's Tendered Exhibits P-43 and P-44.**

Plaintiff contends that the Court erred in not allowing her to use proposed Exhibits P-43 (Exh. A) or P-44 (Exh. B) for impeachment or rebuttal purposes or for the purpose of attempting to refresh Ms. Caprio's recollection. Exhibit P-43 is a July 6, 2004 email from Plaintiff to Ms. Caprio containing, as an attachment, Exhibit P-44. Exhibit P-44 is a print-out of spreadsheet of a reconciliation project that Plaintiff and Caprio were working on at the time of the events in question in this matter. Defendant asserts that:

11

> At approximately 4:00 p.m. on the fourth day of the trial, Plaintiff for the first time disclosed Exhibits P-43 and P-44 and attempted to introduce the documents into evidence. The documents were an e-mail communication and an unauthenticated spreadsheet that Cingular produced in electronic, native format in response to Plaintiff's document request early in discovery. Plaintiff sought to admit these documents into evidence in an attempt to support her assertion that she performed certain work on the July reconciliation project.
>
> Exhibits P-43 and P-44 were not identified as exhibits Plaintiff intended to use at trial in the December 10, 2007 Final Pretrial Order (Dkt. 72) or listed as exhibits on Plaintiff's exhibit list. Further, Plaintiff never disclosed the proposed exhibits in her initial disclosures. She did not disclose the documents in her responses to Defendant's written discovery. Plaintiff did not disclose the existence of the documents during her deposition testimony. Further, at trial, when asked if any e-mails existed relating to this issue, Plaintiff testified there were none:
>
> > Q. Do you have one e-mail, one e-mail, ma'am, to show that you sent her anything on July 6th on any of these spreadsheets? Do you have one e-mail?
> >
> > A. I do not.
> >
> > Tr. 70:1-4.

Def. MOL ¶¶ 25, 26.

Defendant asserts that it opposed admission of the documents, and that the Court properly excluded them, because they constituted the classic "sneak attack" just hours before closings. Plaintiff contends that the documents had been disclosed to Defendant and that the spreadsheet was not a surprise to Defendant because Plaintiff's counsel received it from Defendant's counsel.

Regardless of the parties' characterizations of the documents and their compliance with their discovery and disclosure obligations, and assuming *arguendo* that the

12

documents had been disclosed and should have been admitted,[5] any error in excluding the documents was harmless and did not affect Plaintiff's substantial rights. Ms. Caprio acknowledged during her testimony that Plaintiff did some work on the reconciliation project, so the documents would not have impeached her on this issue. Further, and more importantly, the exhibits did not address the central issues in the case, that is, whether Plaintiff was terminated based on her insubordinate behavior or because of alleged protected activity. Because the preclusion of the documents did not clearly affect Plaintiff's substantial rights, the motion for a new trial is denied. Webb v. ABF Freight System, Inc., 155 F.3d 1230, 1246 (10th Cir. 1998); Fed. R. Civ. P. 61.

## V. CONCLUSION

For the reasons set forth above, Plaintiff's motion for a new trial [dkt. # 241] is **DENIED**.

**IT IS SO ORDERED**

DATED: October 1, 2010

Thomas J. McAvoy
Senior, U.S. District Judge

---

[5] A district court has the right to exclude evidence as a sanction for a party's failure to comply with its discovery obligations under Rule 26(a). See Doctor John's v. Wahlen, 542 F.3d 787, 790 (10th Cir. 2008).

13

# APPENDIX

*Business Judgment*

*You are charged that an employer is entitled to make its own policy, and to exercise its own business judgment, relative to its employees. An employer may make those employment decisions as it sees fit, even if the employer is mistaken and its business judgment is wrong or unfair, as long as it is not unlawful.*

*Pretext*

*Plaintiff claims that Defendant's asserted reason for her discharge was a mere pretext to cover up the unlawful motive. In determining whether Defendant's stated reason for Plaintiff's discharge is genuine or pretextual, the relevant question is whether Defendant's reason was not the real reason for its action.*

*You are not to consider whether Defendant's reason showed poor or erroneous judgment. You are not to consider Defendant's wisdom. However, you may consider whether Defendant's reason is merely a cover-up for an unlawful motive. Pretext is not established just because you disagree with Defendant's business judgment. What you must decide is whether Plaintiff has established that Defendant's reason was a pretext to discharge Plaintiff because she engaged in protected activity.*

*You may consider whether Defendant's reason was consistent with Defendant's own policies and rules and whether Defendant has not applied these policies and rules uniformly. You should also carefully evaluate any subjective reasons Defendant has asserted for its actions. In determining whether Defendant's stated reason for Plaintiff's termination is genuine or pretextual, you should examine the facts as they appeared to the person making the employment decision at the time the decision was made.*

*The Plaintiff did not need to have been a perfect or even a good employee for the law to protect her against retaliation. The law protects average and even below-average workers against being retaliated against.*

*Plaintiff has the burden to persuade you by a preponderance of the evidence that Defendant discharged Plaintiff because she engaged in protected activity. If you do not believe Defendant's explanation, you may, but are not required to, infer that Plaintiff has satisfied her burden of proof that Defendant discharged her because she engaged in protected activity.*

*Intent*

14

*The Plaintiff must show that the Defendant intentionally terminated her employment in violation of public policy. The Plaintiff, however, is not required to    produce direct evidence of retaliation.  A retaliatory motive may be inferred from the existence of other facts.*

*Intent ordinarily may not be proved directly because there is no way of fathoming or scrutinizing the operations of the human mind. But you may infer the Plaintiff's or the Defendant's intent from the surrounding circumstances. You may consider any statement made or act done or omitted by the Plaintiff or the Defendant and all other facts and circumstances and evidence which indicates state of mind and which show whether or not the defendants acted intentionally and not by accident.*

### *Conclusion - Liability*

*The dispositive issue you must decide is whether Plaintiff has proved by a preponderance of the evidence that her employment was terminated because she engaged in protected activity.*

*If you find that Plaintiff has not proved that she engaged in protected activity or that she was discharged because she engaged in such conduct, then your verdict must be for Defendant.*

*On the other hand, if you find that Plaintiff has established that she engaged in protected activity and that Defendant discharged her because she engaged in that conduct, then you will find for Plaintiff on liability and proceed to determine the proper measure of damages.*